UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

LATEE ROBINSON,

                Petitioner,

- against -

SUPT. MARK L. BRADT and SUPT.
THOMAS LAVALLERY,

                Respondents.
------------------------------------------------------X

**OPINION AND ORDER**

10 Civ. 1004 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Latee Robinson ("petitioner," or "Robinson,") brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 ("section 2254") ("the "Petition"), challenging his state court conviction entered on March 3, 2006, following a jury trial in New York State Supreme Court, Bronx County. Petitioner was convicted of murder in the second degree and was sentenced to twenty-five years to life imprisonment.

From what can be discerned from the Petition, including the 167-page addendum, Robinson challenges his conviction on seventeen separate grounds.[1]

---

[1] Those grounds are: (1) petitioner was not present at certain competency proceedings; (2) he was denied certain transcripts; (3) improprieties in the grand jury proceedings; (4) he was improperly denied a *Wade* hearing; (5) his motion for an order of dismissal pursuant to New York's Criminal Procedure Law ("CPL")

For the following reasons, the Petition is denied as time-barred.

## II.   BACKGROUND

### A.   The Offense Conduct

On December 7, 2003, Robinson was at the home of his friend, Fabian Lofton, then fifteen years old. Fabian lived with his mother, Margaret Lofton, his younger brother, his thirty-four year old cousin, Sean Riley, and a family friend and his three daughters. Robinson had slept over the night before and stated that he had never had any problems or confrontations with Riley.[2] Robinson had asked Fabian to borrow a sweater and was given one that belonged to Riley. Robinson then asked for a cigarette, which was apparently taken from Margaret Lofton's room. Riley became upset by these requests and yelled at Robinson.[3]

The following evening, on December 8, 2003, Robinson was again at

---

290.10 was wrongly denied; (6) he was subjected to improper civil forfeiture proceedings; (7) his arrest was improper; (8) the trial court improperly delegated its judicial function; (9) the prosecutor committed misconduct; (10) defense counsel was ineffective for failing to move to suppress identification testimony; (11) hearsay evidence was improperly admitted at trial; (12) the trial court improperly dealt with a jury note; (13) his right to be free from double jeopardy was violated; (14) the evidence of his guilt was insufficient; (15) the prosecution failed to disprove justification; (16) the eavesdropping evidence was improperly admitted at trial; and (17) his right to *Rosario* material was violated. *See* Petition.

[2]   *See* Trial Transcript ("Tr.") at 47-50.

[3]   *See id.* at 227-231, 264-266, 270, 273.

the Lofton's home. Ronald Warner, Fabian's father, was present.[4] Robinson, who appeared very agitated and upset, loudly proclaimed in front of Warner and Fabian that he was going to kill Riley. When asked by Warner with "what," Robinson answered "with my hammer," and pulled out a loaded, black and silver .38 caliber "long nose" revolver and stuck it in Warner's face.[5] After attempting to calm Robinson down, Warner left the room while Fabian, Robinson and Margaret remained in the kitchen. Robinson ate dinner with the gun in his lap.[6] When Riley returned home, he saw Robinson with the gun and asked him what he was going to do with it. Stating "[t]his is what I'm going to do,"[7] Robinson held the revolver to Riley's left cheek and fired, killing him instantly.[8] Crime Scene Unit Detective Lawrence Walsh established that there had been no evidence of a struggle because Riley did not have any gun powder residue on his hands.[9]

On December 31, 2003, by Indictment Number 5276/2003, the Bronx

---

[4]   *See id.* at 148-150, 154, 171-172.

[5]   *Id.* at 150-151, 153-154, 178-180.

[6]   *See id.* at 233.

[7]   *Id.* at 239.

[8]   *See id.* at 239, 242, 245.

[9]   *See id.* at 377.

County Grand Jury charged petitioner with Murder in the Second Degree (two counts) (Penal Law §125.25[1],[2]), Manslaughter in the First Degree (Penal Law § 125.20[2]), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[2]).

### B. The Defense Case

At his trial, petitioner offered the testimony of Alfred Pennill ("Alfred"), who was temporarily living in Margaret Lofton's house with his three daughters at the time of the murder. Alfred, who had witnessed the December 7 argument between Riley and Robinson, testified that he was awakened by a gunshot but did not see anyone exit the kitchen. When he entered the kitchen, Alfred did not see anyone other than the victim.[10] Jessica Pennill ("Jessica"), Alfred's daughter, also testified for the defense.[11] She claimed that on the night of the murder, she saw no one agitated or angry waiting in the kitchen.[12] She also did not see Robinson with a gun or hear any mention of a gun. Jessica then claimed that she saw Riley enter the kitchen, seemingly angry, carrying a gun in his hand.[13]

---

[10]   *See id.* at 438.

[11]   *See id.* at 473-474.

[12]   *See id.* at 486-487.

[13]   *See id.* at 490-491.

She claimed that she heard struggling and then the sound of a gunshot. When the police arrived, Jessica said she felt pressured into giving a statement and therefore gave an inaccurate account so that the police "would just leave her alone."[14]

Robinson gave the following testimony in his own defense. He was in possession of a fake gun which he showed to Warner on the evening of the murder.[15] Riley entered the house with a gun in hand.[16] Robinson told Riley he did not want any problems with him and that his gun was fake. Riley then hit him in the face with his gun, a struggle ensued, and a shot went off.[17] Robinson then left, went home to his mother's house, and was eventually arrested.[18]

### B.    Procedural History

#### 1.    Direct Appeal

In December 2007, Robinson appealed his conviction to the Appellate Division, First Department. On May 27, 2008, the Appellate Division unanimously affirmed Robinson's conviction.[19] The Appellate Division rejected

---

[14]    *Id.* at 500.

[15]    *See id.* at 643-644.

[16]    *See id.* at 644.

[17]    *See id.*

[18]    *See id.* at 645.

[19]    *See People v. Robinson*, 860 N.Y.S.2d 15 (1st Dept. 2008).

petitioner's argument that the trial court failed to properly respond to a jury note.[20] Next, the court concluded that petitioner failed to preserve any of his challenges to the prosecutor's summation and declined to review the claims in the interest of justice.[21]  Alternatively, the court rejected these claims on the merits, finding that the summation did not deprive petitioner of a fair trial.  On September 30, 2008, the Court of Appeals denied petitioner's application for leave to appeal.[22]

### B.   The Coram Nobis Application

On January 6, 2011, petitioner, proceeding *pro se*, moved in the Appellate Division, First Department, for a writ of error *coram nobis*, claiming ineffective assistance of his appellate counsel.[23]  This motion was denied on September 15, 2011.[24]   On February 28, 2012, the Court of Appeals denied leave to appeal.

### C.   Petitioner's CPL 440.10 Motions

On January 27, 2011, proceeding *pro se*, petitioner moved to vacate

---

[20]   *See id.*

[21]   *See id.*

[22]   *See People v Robinson*, 866 N.Y.S.2d 620 (2008).

[23]   *See* 1/6/11 Writ of Coram Nobis, Ex. 3 to Declaration of Nancy Killian in Opposition to the Habeas Petition ("Killian Decl.").

[24]   *See* 9/15/11 Appellate Division, First Department's Denial of Petitioner's Application of Coram Nobis, Ex. 5 to Killian Decl.

the trial court's judgment pursuant to CPL § 440.10 ("§ 440.10") on the ground that his trial counsel was ineffective. Petitioner argued that his trial counsel failed to respond to petitioner's requests on matters of trial strategy, failed to provide him with copies of various reports, minutes and other documentation, and failed to investigate the crime scene. Petitioner's motion was denied in a Decision and Order dated July 28, 2011.[25] Petitioner did not appeal this denial to the Appellate Division.

On November 8, 2011, petitioner, proceeding *pro se*, filed a second motion to vacate the judgement of conviction pursuant to CPL § 440.10. This motion also claimed that trial counsel was ineffective, citing a long list of requests petitioner had made that were "denied" by counsel and counsel's failure to take specific actions and follow certain trial strategies. This motion was denied on March 15, 2012. Meanwhile, on February 8, 2010, petitioner filed the instant Petition.

### D.     The August 3, 2009 CPL 440.10 Motion

On March 31, 2010, this Court placed this case on the suspense docket, as some of Robinson's claims appeared to be unexhausted.[26] On July 25,

---

[25]     Notice of Entry was served upon petitioner on August 15, 2011.

[26]     *Se*e Docket. No. 3. Robinson's Petition stated that he had a pending § 440.10 motion, which had been originally filed on August 3, 2009. Upon further

2012, this Court removed the Petition from the suspense docket after Robinson exhausted all of his claims.

On March 20, 2013, this Court directed Robinson to provide evidence that he actually filed a § 440.10 motion on August 3, 2009.[27] Petitioner was informed that if he could not provide proof of that filing, his Petition would be dismissed as time-barred because it was filed more than one year after his judgment became final on December 29, 2008.  Robinson submitted an Affirmation on April 12, 2013 in which he stated that he should be excused from the statute of limitations because he sustained "a post traumatic stress disorder, with accompanying symptomatology including depression[], anxiety, fear and disturbed sleep . . . ".[28]  He then listed all of the current and former cases he has filed.[29]  However, he did not provide any proof that he filed a § 440.10 motion on

---

examination, it appears that this was incorrect and that no such motion was pending at the time.

[27]   See 3/20/13 Order to Show Cause ("OTSC") (Docket No. 23).  See also *Acosta v. Artuz*, 221 F.3d 117, 124 (2d Cir. 2000) ("The long-standing general rule is that a court may not dismiss an action without providing the adversely affected party with notice and an opportunity to be heard.").

[28]   4/12/13 Affirmation of Latee Robinson, Docket No. 24,  at 2.

[29]   See id. Robinson filed ten civil suits in the Southern, Northern and Western Districts of New York between 2010 and 2013, and has brought several motions and Article 78 petitions in the New York Courts.

August 3, 2009.

### E. Petitioner's Amended Petitions

On November 8, 2012, Robinson filed an Amended Petition, elaborating on the ineffective assistance of counsel claims against his trial counsel. On February 22, 2013, Robinson filed a second Amended Petition which appeared to reiterate the same issues raised in both of his earlier filings.

## III. LEGAL STANDARD

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). There is a one-year statute of limitations for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to a state court conviction.[30] The one-year period runs from the date on which one of the following occurs, whichever happens the latest:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[30] *See* 28 U.S.C. § 2244(d)(1).

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[31]

## IV. DISCUSSION

Robinson's judgment became final on December 29, 2008, when the period in which to seek certiorari from the United States Supreme Court expired.[32] The instant Petition was filed on February 8, 2010, more than one year after the judgment became final. On March 31, 2010, this matter was placed on the suspense docket. In taking that action, this Court relied on Robinson's Petition, which stated that he filed a 440.10 motion on August 3, 2009. But this alleged § 440.10 motion was not mentioned in Petitioner's January 6, 2011 writ of error *coram nobis* or in his January 27, 2011 § 440.10 motion.

Robinson's Affirmation in response to the Order to Show Cause fails to show that a § 440.10 motion had been filed on August 3, 2009. He did not provide a copy of the alleged § 440.10 motion or any other papers relating to this alleged submission. After being given ample opportunity, Robinson has failed to show that he ever filed a § 440.10 motion on August 3, 2009, which would have tolled the one-

---

[31] *Id.*

[32] *See Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

year statute of limitations. [33] The instant Petition is therefore time-barred under the AEDPA.

However, in "rare and exceptional circumstances," the court may equitably toll the limitations period.[34] "To be eligible for equitable tolling, a petitioner must demonstrate 'extraordinary circumstances beyond his control' that prevented him from timely filing his petition."[35] There is no indication in the record of extraordinary or unusual circumstances that would justify equitable tolling in this case.[36] As there

---

[33] Robinson has since filed two § 440.10 motions – on January 27, 2011 and November 8, 2011– but these motions were filed after the expiration of the AEDPA time bar. Thus, no tolling can result from either motion. *See* 28 U.S.C. § 2244(d)(2).

[34] *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citations omitted)).

[35] *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (quoting *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003)). *Accord Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) ("Instances which justify equitable tolling include a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *see Valverde* [*v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000)], a state appellate court's failure to inform a prisoner that his leave to appeal was denied, *see Diaz [v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)], and, perhaps most relevantly, an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so, *see Baldayaque* [], 338 F.3d [at] 150–53 [].").

[36] *See Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) ("[I]n order to justify tolling of the AEDPA one-year statute of limitations due to mental illness, a habeas petitioner must demonstrate that her particular disability constituted an "extraordinary circumstance" severely impairing her ability to comply with the

is no basis for tolling the one-year statute of limitations, Robinson's Petition is denied as time-barred.

## V. CERTIFICATE OF APPEALABILITY

The only remaining issue is whether to grant a certificate of appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[37] A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[38] Petitioner has made no such showing. Accordingly, I decline to grant a certificate of appealability. The Clerk of the Court is directed to close this case.

---

filing deadline, despite her diligent efforts to do so."). Robinson has stated that he suffers from depression and post-traumatic stress disorder. He has not, however, made a sufficient showing that there was a causal relationship between his alleged mental conditions and his delay in filing a timely petition. Nor has Robinson shown that his efforts were otherwise diligent in attempting to submit a timely petition.

[37] 28 U.S.C. § 2253(c)(2).

[38] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
May 31, 2013

## -Appearances-

**Petitioner (Pro Se):**

Latee Robinson
Din# 06-A-1498
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

**For Respondent:**

Nancy D. Killian
Assistant District Attorney
Bronx District Attorney's Office
198 E. 161st St.
Bronx, NY 10451
(718) 590-2494